UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ABDOUL MALIK TAHIROU,

     *Plaintiff*,

     v.

NEW HORIZON ENTERPRISES, LLC,

     *Defendant*.

No. 3:20-cv-00281 (MPS)

## RULING ON MOTION TO COMPEL ARBITRATION

### I.    INTRODUCTION

Plaintiff, Abdoul Tahirou, alleges that Defendant, New Horizon Enterprises, LLC ("New Horizon"), failed to pay him adequate wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and Connecticut's wage statute, Conn. Gen. Stat. § 31-72. Plaintiff also alleges state common law claims for breach of an oral contract, unjust enrichment, vexatious litigation, and breach of the covenant of good faith and fair dealing. New Horizon has moved to stay this litigation and compel arbitration of the claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, citing a written agreement Plaintiff entered into with New Horizon that includes an arbitration clause. For the reasons set forth below, New Horizon's motion to compel arbitration and stay proceedings is GRANTED.

### II.    FACTS

The following facts are taken from the complaint and the attachments to the parties' briefs and are undisputed for purposes of this motion.[1]  Plaintiff began working for New Horizon in December 2017 as a home-health companion. ECF No. 1 ¶ 16, ECF No. 13 at 1.  Plaintiff

---

[1] The only evidence submitted in connection with to the motion to compel arbitration is the arbitration agreement and two emails between counsel.  These items are attached to New Horizon's brief.  ECF Nos. 13-1-13-3. Plaintiff has submitted no evidence and does not contest that he signed the arbitration agreement.

served a single, quadriplegic client, for whom he had worked before being hired by New Horizon

and for whom he was the "primary caregiver" and had "total responsibility." ECF No. 1 ¶¶ 10-

12.  Plaintiff negotiated wages with New Horizon based on the revenues the client was expected

to generate for New Horizon.  Under this arrangement, Plaintiff would be paid $1,000 per week

bi-weekly, plus 40% of the total annual amount of the revenues generated by the client, after

expenses, on a quarterly basis. *Id.* ¶ 15.  According to Plaintiff, this arrangement, which was oral,

"was illegal in light of the fact that Plaintiff was a nonexempt domestic home care employee

working pursuant to Connecticut wage and hour law and the FLSA." *Id.*  Plaintiff later learned

that the amount his client was generating for New Horizon was substantially more than what

New Horizon had told him it would be, and yet he was paid based on the lower amount and was

not paid on time. *Id.* ¶¶ 23-33.  New Horizon also failed to pay him for the overtime he worked

and for vacation and holiday time. *Id.* ¶ 36.  On May 1, 2019, Plaintiff quit his position with

NHE because of its failure to pay the amounts he believed were due. *Id.* ¶ 37.

In January 2018, one month after he was hired, Plaintiff and New Horizon entered into an

agreement titled "EMPLOYEE CONFIDENTIALITY NON-SOLICIT NON-COMPETE

AGREEMENT," (the "Agreement"). ECF No. 13-1 at 2.  The Agreement states in relevant part:

> Abdoul Tahirou, the undersigned Employee, hereby agrees not to directly or indirectly
> compete with the business of [New Horizon] and its successors.
>
> Consideration. In consideration of the Employee's execution of this Agreement, you shall
> hold the position of "Companion" . . . as an at-will employee of [New Horizon] and shall
> receive future wages and employment benefits, payment of which during the period of
> your employment is a condition of this Agreement.

*Id.*  The Agreement includes a "Non-Competition" provision that prohibits Plaintiff from

performing the same or substantially the same duties within a 15-mile radius of New Horizon for

a period of 12 months after employment terminates. *Id.*  The Agreement also states that Plaintiff

is an at-will employee, may can be terminated by New Horizon for any reason, and may resign

for any reason. *Id.* The Agreement adopts the law of Connecticut as the governing law. *Id.* at 3.

Finally, the Agreement provides that "[t]his Agreement, which includes Exhibits A 'job duties',

and B 'arbitration clause' represents the entire understanding between [New Horizon] and

[Plaintiff] on the matters addressed herein. . . ." *Id.* at 3.[2]  The Agreement is signed and dated by

Plaintiff and a New Horizon company representative. *Id.*

> Exhibit B, which is attached and titled "ARBITRATION CLAUSE," contains five

paragraphs. Paragraph one provides in relevant part:

> In consideration of the benefits described in the Confidentiality, Non-Competition, and
> Non-Solicitation Agreement . . . and into which this Exhibit B is incorporated . . . [New
> Horizon] and you hereby agree that any controversy or claim arising under federal, state
> and local statutory or common or contract law between [New Horizon] and you involving
> the construction or application of any of the terms, provisions, or conditions of the
> Agreement, including, but not limited to, breach of contract, tort, and/or fraud, must be
> submitted to arbitration on the written request of either party served on the other.
> Arbitration shall be the exclusive forum for any such controversy.  For example, if [New
> Horizon] and you have a dispute concerning the interpretation or enforceability of one or
> more restrictive covenants, the parties will resolve the dispute exclusively through
> arbitration.  The Arbitrator's decision shall be final and binding on both parties.

*Id.* at 4.  Paragraphs two and three of the arbitration clause allocate which party shall be

responsible for attorney's and arbitration fees, paragraph four lists Boston, Massachusetts, as the

arbitration location, and paragraph five states that the arbitration shall be governed by the

American Arbitration Association's Commercial Arbitration Rules. *Id.*  Exhibit B is initialed by

the Plaintiff and New Horizon. *Id.* at 4.

> After quitting in May 2019, Plaintiff applied for unemployment compensation benefits,

and the State of Connecticut determined that he was entitled to such benefits, despite New

Horizon's challenges to and appeals of that determination. ECF No. 1 ¶¶ 38-42, 46-47.  In

---

[2] The Agreement and Exhibit B are attached to New Horizon's motion to compel, but Exhibit A is not, and neither party has submitted Exhibit A to the Court.

October 2019, New Horizon sued Plaintiff in state court (the "State Court Action") for violating

the non-competition agreement. *Id.* ¶ 43.  Plaintiff filed a motion to strike the complaint in the

State Court Action on the ground that the noncompetition agreement was unenforceable under a

state statute that became effective in June 2019 and that provided that covenants not to compete

restricting the rights of home health care workers to provide services in Connecticut were void

and unenforceable. *Id.* ¶¶ 43, 49.  In December 2019, New Horizon withdrew the complaint in

the State Court Action. *Id.* ¶ 51.

Plaintiff filed this action in February 2020, alleging that New Horizon failed to pay him

adequate wages for the services he had provided during his term of employment, namely

between December 2017 and May 2019. ECF No. 14 at 5.  Plaintiff's complaint alleges failure to

pay wages under FLSA (Count One), failure to pay wages under Connecticut's wage law (Count

Two), breach of oral contract (Count Three), unjust enrichment (Count Four), vexatious

litigation (Count Five), and breach of the covenant of good faith and fair dealing (Count Six).

ECF No. 14 at 6.  New Horizon responded to Plaintiff's complaint on April 2, 2020 by filing a

motion to compel arbitration and stay proceedings. ECF No. 13.

## III.  DISCUSSION

In deciding a motion to compel arbitration, I must determine "(1) whether the parties

agreed to arbitrate; (2) the scope of the agreement; and (3) if federal statutory claims are

asserted, whether Congress intended for those claims to be nonarbitrable.[3] *Daly v. Citigroup Inc.*,

939 F.3d 415, 421 (2d Cir. 2019) (citations and internal quotation marks omitted).  Plaintiff does

not dispute that he signed the "EMPLOYEE CONFIDENTIALITY NON-SOLICIT NON-

COMPETE AGREEMENT" containing the arbitration clause described above, and he does not

---

[3] Plaintiff does not oppose the motion to compel arbitration on the ground that Congress intended his
claims to be non-arbitrable. I, therefore, need not reach that issue.

contend that Congress intended that his federal claims under the FLSA be non-arbitrable.  His primary argument concerns the second issue – the scope of the arbitration clause; he contends that the claims alleged in his complaint do not fall within the scope of that provision.  He also argues that  New Horizon has waived its right to arbitration, and that the arbitration clause is unenforceable because it lacks a valid waiver of his right to a jury trial. ECF No. 14 at 7, 13, 16. I address each of these arguments below.

    **A.  Scope of The Arbitration Agreement**

Plaintiff asserts that the arbitration agreement is limited to disputes regarding confidentiality and non-compete restrictions and that there was no agreement to arbitrate disputes regarding employment or wages. ECF No. 14 at 7-10.  I disagree, and find that the dispute set forth in the complaint is within the scope of the arbitration clause.

The question of whether Plaintiff's claims come within the scope of the arbitration agreement is one for the Court to decide. *See Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 47-48 (2d Cir. 2000) (citations omitted) ("We take no issue with the District Court's decision to determine the relationship between the claims and the scope of the contract containing the arbitration clause.").  In determining whether a dispute falls within the scope of an arbitration agreement, "a court should decide at the outset whether the arbitration agreement is broad or narrow." *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (internal quotation marks and alterations omitted); *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224-25. (2d Cir. 2001) ("First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. . . . [M]aking a distinction between broad and narrow arbitration clauses is necessary and sound, as the scope of the arbitration clause, like any contract provision, is a

question of intent of the parties.") (citations and internal quotation marks omitted).  If the

arbitration clause is broad, a presumption of arbitrability arises and I must compel arbitration

over even a collateral matter; if the clause is narrow, collateral matters generally will fall outside

the scope of the arbitration clause, unless the issue, on its face, is within the scope of the clause.

*Id.* at 224.

The arbitration clause in the present case provides that "[i]n consideration of the benefits

described in the [Agreement]" New Horizon and Plaintiff "agree that any controversy or claim

arising under federal, state and local statutory or common or contract law between [New Horizon

and Plaintiff] involving the construction or application of any of the terms, provisions, or

conditions of the Agreement, including, but not limited to, breach of contract, tort, and/or fraud,

must be submitted to arbitration." ECF No. 13-1 at 4.

"[E]xpansive language will generally suggest a broad arbitration clause." *Louis Dreyfus*

*Negoce S.A.,* 252 F.3d at 225.  For example, arbitration clauses that cover "any and all

controversies" – similar to the "any controversy or claim" language used here – have been found

to be "inclusive, categorical, unconditional and unlimited." *Paine Webber Inc. v. Bybyk*, 81 F.3d

1193, 1199 (2d Cir. 1996). The Second Circuit has "also found broad clauses when examining

phrasing slightly more limited." *Louis Dreyfus Negoce S.A.,* 252 F.3d at 225.  For example, in

*Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 71 (2d Cir. 1997), the court classified as

"broad" the following language, which is similar to that in the agreement in this case: "all

differences arising *between the parties to this agreement as to interpretation, application or*

*performance* of any part of this agreement." *Id.* (emphasis added); *Louis Dreyfus Negoce S.A.,*

252 F.3d at 225 (citing *Bevona* as an example of a case involving a "broad clause."); *see also*

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986)

(noting that "a presumption [of arbitrability] is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder….'").

By way of comparison, the following clauses were both classified as narrow in *Prudential Lines, Inc. v. Exxon Corp.,* 704 F.2d 59, 61 (2d Cir. 1983):

> Should any dispute arise between the Owner and the Charterer in respect to the responsibility for repairs, renewals or replacements, or as to the condition of the vessel at the time of redelivery, the matter shall be decided by arbitration as provided in Clause 25. . . . [and] Should any dispute arise under this agreement, the matter in dispute shall be referred to three persons, one to be appointed by Owner, one by Charterer, and the third by the two so chosen; and their decision or that of any two of them shall be final, and their award may be made a rule of court and a judgment or decree entered thereon.

*Id.* at 64.  The first clause is narrow because it "is specifically limited to disputes regarding 'responsibility for repairs, renewals or replacements, or as to the condition of the vessel at the time of redelivery.'" *Id.* at 64 n. 5.  The second clause is narrow because it is limited to disputes that "arise under" the charter agreement. *Id.*  The phrase "arising under" when unaccompanied by a more expansive phrase such as "relating to" ordinarily limits the clause's scope. *See Louis Dreyfus Negoce S.A.,* 252 F.3d at 225 (explaining that "only the precise language ['arising under' an agreement] . . . would evince a narrow clause").

Although the arbitration clause in the present case contains some limiting language, and the call as to whether the clause should be classified as broad or narrow is a close one, I conclude that the expansive opening terms of the clause and the similarity between its overall language and the language deemed "broad" in *Bevona* weigh in favor of classifying the clause at issue here as "broad."[4]  The first phrase of the arbitration clause, "any controversy or claim" is broad.  The

---

[4] Admittedly, some district court decisions within the Second Circuit have classified clauses that are also reasonably similar to that involved here as "narrow."  *See, e.g., Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire*

clause then uses the phrase "arising under," which could potentially suggest a narrow classification.  However, the language is not precisely the "arising under the agreement" language described in *Louis Dreyfus Negoce*.  Rather, it covers any controversy or claim "arising under federal, state and local statutory or common or contract law," suggesting a broader classification because it covers any dispute arising under any law, as opposed to any dispute arising under this agreement.

The next phrase, "and involving the construction or application of any of the terms, provision, or conditions of the Agreement," limits somewhat the disputes that must be submitted to arbitration but, as noted, the *Bevona* court found a reasonably similarly worded clause to be "broad."  And one district court within the Second Circuit classified a very similar clause as "a classically broad arbitration clause." *See Kuchinsky v. Curry*, No. 09-cv-00299, 2009 WL 1492225, *3 (S.D.N.Y. May 29, 2009).  In *Kuchinsky*, the arbitration clause provided in relevant part: "Any controversy or claim arising out of or relating to the construction of or application of any terms, provisions, or conditions of this Agreement shall . . . be submitted to arbitration. . . ." *Id.* at *2 (emphasis  omitted).  The difference is that in *Kuchinsky*, the clause addressed claims *arising out of* or *relating to* the construction or application of terms, whereas, the clause in the present case addresses claims *arising under law* and *involving* the construction or application of terms.  But it would be difficult to draw a meaningful distinction between the clause at issue in

_____

*Ins. Co. of Pittsburgh, PA*, 857 F. Supp.2d 404, 407, 409  (S.D.N.Y. 2012) (classifying as "narrow" agreement providing that "all disputes or differences arising out of the interpretation of this Agreement" shall be submitted to arbitration); *New Hampshire Ins. Co. v. Canali Reinsurance Co., Ltd*, 2004 WL 769775 *1-2 (S.D.N.Y. Apr. 12, 2004) (same).  But the clause in *Bevona* – which applied to "differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement" – is somewhat closer to the language at issue here – "any controversy or claim arising under federal, state and local statutory or common or contract law between [New Horizon and Plaintiff] involving the construction or application of any of the terms, provisions, or conditions of the Agreement, including, but not limited to, breach of contract, tort, and/or fraud."  Both the clause in *Bevona* and the one at issue here make clear that the parties intended to encompass disputes well beyond those involving interpretation of the Agreement.

this case and the one at issue in *Kuchinsky*, especially because online dictionaries define "involve" as, among other things, "include," "entail," and "affect." *See, e.g.,* Merriam-Webster.com. In fact, the court in *Bevona* used the terms "involve" and "as to" interchangeably in its analysis of an arbitration clause. *See Bevona*, 123 F.3d at 71, 74 (The arbitration clause provided that the arbitrator shall decide "all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement. . . ." yet, the court summarized the clause as "*all* disputes between the parties *involving* the interpretation of any provision of the agreement" and classified the clause as broad.) (emphasis in original). Accordingly, I find that the arbitration clause at issue here is broad and apply a presumption in favor of arbitrability. Thus, if Plaintiff fails to rebut the presumption, I must compel arbitration. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 301 (2010).

Plaintiff argues that the Agreement does not cover his claims seeking "to recover wages or salary owed to him for services rendered" because those claims "do not invoke any issue 'involving the construction or application of any of the terms, provisions, or conditions of the Agreement.'" ECF No. 14 at 11. Because "all doubts as to the scope of an arbitration clause [must] be resolved in favor of coverage, particularly where, as here, the clause is a broad one," *In re Bartin Deniz Nakliyati*, 1989 WL 128581 *11 (E.D.N.Y. July 10, 1989), however, I find that the presence of general language in the agreement referring to the payment of wages is enough to bring his claims within the scope of the arbitration clause. The arbitration clause states that "[i]n consideration of the benefits described in the Confidentiality, Non-Competition, and Non-Solicitation Agreement," the parties agree to submit any controversy or claim to arbitration. ECF No. 13-1 at 4. The "benefits" referenced are described within the "Consideration" provision of the "Employee Confidentiality Non-Solicit Non-Compete Agreement" and include "future wages

9

and employment benefits." *Id.* at 2, 4.  Specifically, the Consideration provision provides that

Plaintiff "shall receive future wages and employment benefits, payment of which during the

period of [Plaintiff's] employment is a condition of this agreement." *Id.* at 2.

       The primary dispute described in the complaint concerns the amount and timing of wages

owed to Plaintiff under the Agreement.  Plaintiff's complaint states that his "wages were never

timely paid to him and was never for the correct amount but for substantially less than the agreed

amount.  In at least one instance, Plaintiff was paid one month after Plaintiff was to receive his

quarterly payment." ECF No. 1 ¶ 27.  Although the "Employee Confidentiality Non-Solicit Non-

Compete Agreement" does not set forth the amount of wages that New Horizon agreed to pay or

the times at which such wages would be due, it makes clear that payment of wages and benefits

in general is a condition of the agreement.  While one reasonable construction of the

"Consideration" provision is that only the failure to pay any wages at all would violate this

condition, another equally reasonable construction is that any failure to pay the wages *agreed to

by the parties* would do so.  The latter construction, which would plainly encompass the wage

claims set forth in Plaintiff's complaint (one of which is breach of an oral contract regarding

wages), is reasonable because it is unlikely that any employee would agree to be bound by

restrictive covenants in an agreement simply because he was being paid *any* wage, no matter

how paltry; but he might well agree to do so if he was paid the wage he had negotiated with his

employer.  In other words, it is plausible to read the agreement as making the payment of the

agreed-to wages a condition of the enforcement of the restrictive covenants.  Because this

language of the agreement is susceptible to two reasonable constructions, it is ambiguous and,

because of the presumption, must be construed in favor of arbitrability. *See PaineWebber Inc. v.

Bybyk*, 81 F.3d 1193, 1198 (2d. Cir. 1996) ("Where the arbitration agreement is ambiguous, the

Federal Arbitration Act's policy favoring arbitration requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (internal quotation marks omitted)).  Therefore, Plaintiff has failed to overcome the presumption in favor of arbitrability, and his claims concerning the amount and timing of wages is a "controversy," "arising under federal, state and local statutory or common or contract law," "involving," the "application" of a "condition" of the Agreement, i.e., the condition that he be paid wages.

The only claim within Plaintiff's Complaint that does not involve payment of wages is the claim for vexatious litigation (Count Five).  That claim, however, even more clearly falls within the scope of the arbitration clause because it plainly involves the construction or application of the terms, provision, and conditions of the Agreement. ECF No. 1 ¶¶ 78-79. According to Plaintiff, the vexatious litigation claim stems from the State Court Action brought by New Horizon against Plaintiff for his alleged breach of the noncompete provisions in the Agreement. ECF No. 14 at 2.  Plaintiff alleges in his Complaint that New Horizon "knew or should have known the statutory ban against noncompetition agreements for home health care employees existed, yet [it] filed the above lawsuit with reckless indifference to Plaintiff's reputation and lacked probable cause on any claim." *Id.* at ¶ 79.  Determining whether New Horizon lacked probable cause to bring the State Court Action would require, among other things, a determination whether the Connecticut statute adopted in June 2019 applied to the "Employee Confidentiality Non-Solicit Non-Compete Agreement," which would necessarily entail the "construction or application of … the terms, provisions, or conditions of the Agreement."  ECF No. 13-1 at 4.  The vexatious litigation claim thus is plainly within the scope of the arbitration clause.

**B. <u>Waiver</u>**

Next, Plaintiff argues that New Horizon waived its right to arbitration by bringing the State Court Action in October 2019. ECF No. 14 at 14.  New Horizon asserts that the question of waiver is one for the arbitrator, not this Court. ECF No. 15 at 3.  The Second Circuit has stated that "ordinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002) (citation omitted).  When, however, the party seeking to compel arbitration has previously filed litigation over the dispute, the issue is one for the Court to decide. *Id.* at 570; *see also Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 456  n. 12 (2d Cir. 1995) ("[W]e are bound to hold that a district court may reach the question of waiver whenever a party seeking arbitration has engaged in any prior litigation."); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 80-81 (2d Cir. 2017) ("When the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver. Because Meyer's waiver argument is based on defendants' defense of this litigation in the district court, we conclude that is a question for the district court rather than an arbitrator." (internal citation omitted)).[5]

For a party to waive its right to arbitration, it must "engage[] in protracted litigation that results in prejudice to the opposing party." *Doctor's Assoc., Inc.*, 107 F.3d at 131 (citations and internal quotation marks omitted); *see also Sweater Bee by Banff, Ltd. V. Manhattan Indus., Inc.*, 754 F.2d 457, 459, 461 (2d Cir. 1985) (noting that "litigation of substantial issues going to the merits may constitute a waiver of arbitration" and finding no waiver even though party seeking

---

[5] *Bell* suggests that where the previous litigation between the same parties is wholly unrelated to the dispute that is the subject of the motion to compel arbitration, the issue of waiver should be submitted to the arbitrator.  *Bell*, 293 F.3d at 570 (finding that district court properly referred waiver issue to arbitrator because, "[a]lthough the Connecticut action and the arbitration both involve the same parties and were brought pursuant to the Adviser Agreement, they pertain to entirely different facts.").  Here, because of the presence in this action of the vexatious litigation claim – which presents the issue whether New Horizon filed the State Court Action without probable cause – I cannot conclude that the two proceedings "pertain to entirely different facts," *Id.*

arbitration had filed and obtained ruling on motion to dismiss in the district court before announcing its intent to seek arbitration seven months after the lawsuit was filed).

I find that the parties have not engaged in such "protracted litigation" that the Plaintiff would be prejudiced if the dispute were submitted to arbitration. According to Plaintiff, New Horizon withdrew the State Court Action only two months after it was filed and only shortly after Plaintiff filed a motion to strike based on the new Connecticut statute making certain non-compete agreements void and unenforceable. ECF No. 1 ¶¶ 43, 49, 51. Plaintiff's motion to strike was not adjudicated and, indeed, the state court rendered no decisions on the merits of any issue. Further, the time from the filing of the State Court Action to its withdrawal – about two months – was very short. While Plaintiff did incur the costs of briefing and filing the motion to strike, those actions will not likely have been wasted, as they will likely figure in the resolution of the vexatious litigation claim; indeed, the fact that the action was withdrawn following the filing of the motion to strike raising the new Connecticut statute appears to be the primary basis of the vexatious litigation claim. In any event, to the extent Plaintiff claims he was prejudiced because he incurred costs related to the filing of the motion to strike in the State Court Action, that prejudice does not depend on whether this case is sent to arbitration or remains before the Court; Plaintiff will retain the right to seek those costs in the arbitration by virtue of his vexatious litigation claim. For these reasons, I conclude that New Horizon did not waive its right to arbitrate by filing the State Court Action.

### C. **Jury Waiver**

Finally, Plaintiff argues that the arbitration clause is unenforceable because it lacks a valid waiver of the right to jury trial. ECF No. 14 at 16. Plaintiff does not argue that he was

fraudulently induced to sign the waiver, but argues that, as a legal matter, the clause is unenforceable because it lacked a jury trial waiver. *Id.*

The parties have assumed that this issue is governed by Connecticut law – the governing law under the agreement – rather than federal law.  Under the Federal Arbitration Act ("FAA"), an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. Sec. 2.  Thus, state law regarding the enforceability of a contract "is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," but "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of [Section] 2 [of the FAA]." *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987).  The parties do not address whether the principles governing whether a contractual waiver of the right to a jury trial is valid relate to the enforceability of contracts generally or "take[ their] meaning precisely from the fact that a contract to arbitrate is at issue." *Id.*  I assume without deciding that such principles "arose to govern issues concerning the … enforceability of contracts generally" and thus turn to Connecticut law, as the parties have.

Contrary to Plaintiff's assertions, "Connecticut law does not require an explicit jury waiver to create an enforceable arbitration agreement." *Murphy v. Glencore Ltd.*, 3:18-cv-01027 (CSH), 2019 WL 549139, *5 (D. Conn. Feb. 11, 2019) (collecting cases).  Instead, Connecticut courts look to the following factors to determine the validity of a jury waiver:

> (1) the conspicuousness of the waiver clause, including (a) its location relative to the signatures of the parties, (b) whether it was buried in the middle of a lengthy agreement, and (c) whether it was printed in a different typeface or font size than the remainder of the contract; (2) whether there was a substantial disparity in bargaining power between the parties to the agreement; (3) whether the party seeking to avoid enforcement was represented by counsel; (4) whether the opposing party had an opportunity to negotiate the terms of the agreement; and (5) whether the opposing party had been fraudulently induced into agreeing specifically to the jury trial waiver.

14

*L & R Realty v. Connecticut Nat. Bank*, 715 A.2d 748, 755 (Conn. 1998) (explaining that the party seeking to avoid a jury waiver must come forward with evidence that the waiver is "in particularly fine print or is buried in the middle of a voluminous document," or that they "were not represented by counsel.").

Here, there is ample evidence that Plaintiff intended to waive his right to a jury trial. "An arbitration agreement, by its terms, requires relinquishment of the right to a jury trial." *Murphy*, 2019 Wl 549139 *6. The arbitration clause in this case further provided that "[a]rbitration shall be the exclusive forum for [any claim or controversy covered by the arbitration clause]," and that any attempts to bring an arbitrable dispute to court would allow the arbitrator to require the party initiating the court action to reimburse the other party for reasonable attorney's fees related to the court action. ECF No. 13-1 at 4. These provisions leave no doubt that the signatories to the Agreement were giving up their rights to a jury trial. Further, the arbitration clause was highly conspicuous. It was its own exhibit and the title is bold and underlined "**EXHIBIT B – ARBITRATION CLAUSE**." ECF No. 13-1 at 4. The arbitration clause contains five separate paragraphs, all pertaining to different arbitration procedural considerations, namely, scope, attorney's fees, arbitration venue, and arbitration rules. *Id.* It also contains a signature line for both Plaintiff and New Horizon. *Id.* Plaintiff's initials are on the signature line, and his signature appears on the main agreement document, which states that "[t]he parties acknowledge and agree that they are bound by their arbitration obligations under Exhibit B attached hereto," and that "[t]his Agreement … includes Exhibit[] … B, "arbitration clause …." *Id.* at 3-4.

Plaintiff argues that the Agreement was "thrust upon" him, that he was not permitted to ask questions, and that he was not allowed the opportunity to read it before signing. ECF No. 14 at 18. He has submitted no affidavit or other evidence related to this issue. In any event,

Plaintiff's argument that he did not read the Agreement fails under Connecticut law. *See DiUlio v. Goulet,* 2 Conn. App. 701, 704 (1984) ("The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter."); *Murphy*, 2019 WL 549139, at *7 ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.") (citation and quotation marks omitted).  Plaintiff offers no evidence that he was defrauded or that New Horizon did anything to mislead him into signing the Agreement. *See* note 1, supra.  I therefore conclude that Plaintiff has failed to show that the arbitration clause is unenforceable.

### D.  **Motion to Stay Proceedings**

Since I have granted New Horizon's motion to compel arbitration on all of Plaintiff's claims, I must also grant a stay of the proceedings. *See Katz,* 794 F.3d at 345-46 (concluding that a mandatory stay comports with the FAA's text, statutory scheme, and underlying policy "when all of the claims in an action have been referred to arbitration and a stay requested."). I therefore stay the proceedings and submit the dispute to arbitration.

### IV.    CONCLUSION

The Motion to Compel Arbitration and Stay Litigation is GRANTED. The Clerk is instructed to close this case.  Either party may move to reopen this case following the decision by

the arbitration panel.  Any such motion must be filed within 30 days of the rendering of the decision and a copy of the decision must be filed with the Court.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut

October 29, 2020