UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ABDOUL MALIK TAHIROU, : | |
| : | |
| Plaintiff : | Case No. 3:20-CV-00281 (SVN) |
| : | |
| v. : | |
| : | |
| NEW HORIZON ENTERPRISES, LLC, : | |
| ELIZABETH JOHNSON; : | |
| JANELLE LESINSKY, : | |
| : | |
| Defendants. : | March 4, 2024 |
| : | |

**REVISED JOINT MOTION TO CONFIRM SETTLEMENT AGREEMENT**

The parties hereby file the instant revised joint motion to confirm the settlement agreement entered into between them on February 15, 2024, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq* (FLSA). A copy of the "revised" fully executed settlement agreement is attached hereto as **Exhibit A.**

Pursuant to the FLSA, an employee cannot waive or settle his claims for unpaid wages unless the settlement is (1) supervised by the Secretary of Labor or (2) judicially stipulated and approved. Joo v. Kitchen Table, Inc., 763 F.Supp.2d 643, 644 (S.D.N.Y 2011); Martinez v. Ragtime Foods of New York, Inc., 2011 WL 5508972, at *1 (E.D.N.Y. Nov. 10, 2011); Mosquera v. Masada Auto Sales, Ltd., 2011 WL 2823327, at *1 (E.D.N.Y. Jan.25, 2011).

When the parties to an FLSA case have reached a settlement, the Act requires the agreement to be submitted for approval. The settlement agreement itself is a judicial document to which the presumption of public access attaches. Joo, 763 F.Supp.2d at 644; Cepeda v. 251 Realty LLC, 2011 WL 5402917, at *1 (E.D.N.Y. Nov. 8, 2011); Mosquera, 2011 WL 282327, at *2; Xue Lian Lin v. Comprehensive Health Mgmt., 2009 WL 2223063, at *1 (S.D.N.Y. July 23,

1

2009); see also Hens v. Clientlogic Operating Corp., 2010 WL 4340919, at *2 (W.D.N.Y. Nov. 2, 2010) ("Numerous circuit and district courts have concluded that a settlement agreement submitted to the court for consideration and approval is a judicial record and, thus, the presumption of public access attaches."); Baker v. Dolgencorp, Inc., 818 F.Supp.2d 940, 943 (E.D.Va.2011) ("It is undisputed that an FLSA settlement agreement, submitted to a court for judicial approval, is a judicial record that triggers the common law right of public access."). As such, "there is a strong presumption in favor of keeping settlement agreements in FLSA wage-settlement cases unsealed and available for public view[.]" Hens, 2010 WL 4340919, at *2 (citations and internal quotation marks omitted) (citations and internal quotation marks omitted).

"There are two independent grounds upon which the presumption of public access attaches to FLSA settlement agreements. 'First, is the general public interest in the content upon which a court's decision is based, including a determination of whether to approve a settlement.' 'Second is the 'private-public character' of employee rights under the FLSA, whereby the public has an 'independent interest in assuring that employees wages are fair and thus do not endanger the national health and well-being.' Thus, a judicially approved FLSA settlement agreement should not be filed under seal…" Bouzzi v. F & J Pine Restaurant, LLC, 841 F.Supp.2d 635, 639 (E.D.N.Y. Jan. 11, 2012) (internal citations omitted).

The parties have revised the settlement agreement to comply with the holding in Cheeks v. Freeport Pancake House, Inc. 796 F.3d 199, 207 (2d Cir.2015).

In determining whether a proposed settlement is fair and reasonable, the Court must consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and

defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The parties assert that the Wolinsky factors have been satisfied and the settlement is fair and reasonable.

1.  **Possible Range of Recovery**

The Court has issued a prejudgment remedy [Doc.#142] in this case after several days of hearings which provided a possible range of recovery in this case. The Order states in part,

> "ORDER, granting in part and denying in part 79 Renewed Application for Prejudgment Remedy. As set forth in the attached Ruling, the application is granted to the extent that (a) Plaintiff is granted a prejudgment remedy against New Horizons Enterprises, LLC and Ms. Elizabeth "Betty" Johnson, jointly and severally, in the amount of $39,218.33; and (b) Plaintiff is granted an additional prejudgment remedy against New Horizons Enterprises, LLC only, in the amount of $157,269.16. The application is denied to the extent that it seeks a prejudgment remedy against Ms. Janelle Lesinsky."

2.  **Extent Settlement Seeks to Avoid Burdens**

The Plaintiff does not possess finances to pay for legal fees. The Defendants also have demonstrated to the Court in their respective requests for pro bono counsel that they do not have the finances to pay for a larger settlement than agreed to in this case.

3.  **Seriousness of Litigation Risks**

The PJR decision [Doc.#142] demonstrated the possible risks and outcome. The Court's decision denying summary judgement [Doc.#205] also demonstrated the possible risks and outcome in this case.

4.  **Agreement Product of Arm's Length Bargaining**

The parties' were all represented by well experienced litigation counsel throughout the settlement negotiation process before Judge Holly Fitzsimmons. Attorney Carey is an

experienced employment law litigator before this Court for the past twenty-six years and has filed 123 employment cases, including FMLA cases. Attorney Carey is also admitted in/pro hac vice other federal court jurisdictions nationwide and has filed more than 24 employment related cases, including FMLA cases and a large collective action. Attorney Rohback is an accomplished litigator and trial lawyer with roughly forty-five years of experience. In addition to handling multiple FLSA collective and class actions, along with over twenty FLSA arbitrations, Rohback has won numerous motions to dismiss, motions for summary judgment, and trials, including the jury trial of a CUTPA class action. In this case, as court-appointed counsel to Defendant Johnson, he submitted a thirteen-page mediation brief to Magistrate Judge Fitzsimmons which raised serious defenses that would present great risk for the plaintiff if the case proceeded to trial. Attorney Kushel is an experienced litigation counsel and has defended against FLSA claims.

    **5.    Possibility of Fraud or Collusion**

This factor was not present in the case.

    **6.    Attorney's Fees**

The Plaintiff entered into an hourly fee arrangement with his legal counsel on October 2, 2019. Plaintiff's counsel has billed Plaintiff throughout the duration of the litigation, which has lasted more than four and a half years. This period covers the unemployment appeal hearing, the Connecticut Superior Court litigation that Defendant filed against Plaintiff for alleged noncompetition violation that was later withdrawn, and the instant litigation which has included a full prejudgment remedy hearing and cross motions for summary judgment. Plaintiff has incurred legal fees in the amount of $368,530.00 which are documented in invoices generated by the undersigned. However, Plaintiff has only paid $22,500.00 in fees.

In January 2020, Plaintiff was unable to pay his legal fees due to the loss of his only client and the subsequent pandemic. Plaintiff's counsel decided to continue the representation to trial or settlement because Plaintiff could recover legal fees after receiving a judgment in his favor. Plaintiff's counsel agreed to waive the outstanding legal fees during the negotiation of the settlement in exchange for one half of the settlement amount in order to achieve a settlement. The remaining balance of outstanding legal fees were waived as pro bono services in favor of Plaintiff, as part of the undersigned commitment to providing pro bono services and access to this Court.

The parties assert the <u>Wolinski</u> factors have been addressed and the settlement is fair and reasonable.

The parties herein respectfully request that the Court confirm the settlement agreement entered into between them.

Respectfully Submitted,

PLAINTIFF
ABDOUL MALIK TAHIROU

By:_____/s/_____
Mark P. Carey (ct17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
mcarey@capclaw.com

HIS ATTORNEYS

DEFENDANT
JANELLE LEWSINKSKY

BY:_____/s/_____
Rachel Volkman Kushel
Robinson & Cole, LLP-HTFD
280 Trumbull St.
Hartford, CT 06103
860-275-8200
Fax: 860-275-8299
Email: rkushel@rc.com

DEFENDANT
BETTY JOHNSON

BY:_____/s/_____

Thomas G. Rohback
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
860-275-8110
Fax: 860-275-8101
Email: trohback@axinn.com

CERTIFICATE OF SERVICE

    I hereby certify that on March 4, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Mark P. Carey
Mark P. Carey

# EXHIBIT A

**SETTLEMENT AGREEMENT,
<u>GENERAL RELEASE AND CONFIDENTIALITY AGREEMENT</u>**

**WHEREAS,** Abdoul Malik Tahirou ("Tahirou") filed a complaint in the United States District Court for the District of Connecticut on or about February 28, 2020 against New Horizon Enterprises, LLC ("New Horizon"); and

**WHEREAS** Tahirou subsequently amended the complaint to add Janelle Lesinsky ("Lesinsky") and Betty Johnson ("Johnson") (collectively, with New Horizon, "Defendants") (Tahirou and Defendants are hereinafter referred to collectively as the "Parties"), and Joyce Michelle Carswell, bearing the Case Number 3:20-CV-00281 (MPS) (the "Action"), alleging, among other things, violation of the Fair Labor Standards Act ("FLSA") and the Connecticut Wage Act ("CWA"); and

**WHEREAS**, Defendants deny all claims against them; and

**WHEREAS,** prior to expending additional time and resources undertaking further litigation, and in order to resolve amicably the above Complaint and any and all matters in controversy, disputes, causes of action, claims, contentions and differences between them, the Parties have reached a full and final compromise and settlement of any and all such matters; and

**WHEREAS,** the Parties agree that a settlement of the matters alleged in the Complaint, and all claims and potential claims of Tahirou against Defendants as defined herein, up to and including the date of execution of this Settlement Agreement, General Release and Confidentiality Agreement ("Agreement"), would best serve the Parties and the public interest; and

**WHEREAS**, the Parties agree and understand that the Settlement Agreement

1

terms and conditions must be approved by the Court, pursuant to the Fair Labor Standards Act (FLSA).

## ADDITONAL DEFINITIONS

1. "Released Matters" means any released accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to the Agreement and released herein.

2. "Releasees" means Defendants, including all of their past, present and future officers, directors, partners, members, owners, employees, parent companies, subsidiaries, divisions, affiliates, insurers, reinsurers, agents, board members and attorneys, and their respective predecessors, successors, heirs, and assigns.

## TERMS

**NOW THEREFORE,** for the promises and releases contained in this Agreement, and provided that the Parties hereto properly execute this Agreement, the Parties agree as follows:

1. Tahirou acknowledges that Defendants do not admit any liability, wrongdoing or violation of any law, statute, regulation, agreement, or policy, but expressly deny the same. It is understood and agreed that this Agreement is being entered into solely for the purpose of amicably resolving the matters in controversy between the Parties and avoiding the expense of further litigation.

2. Tahirou agrees not to disparage, denigrate, or defame Defendants, including their past, present and future officers, directors, owners, partners, members, employees, board members, agents, attorneys, insurers, heirs, executors, parent

2

companies, subsidiaries, predecessors, successors, heirs, and assigns, in any manner to any person.  Defendants agree not to disparage, denigrate, or defame, Tahirou, his employees, attorneys, heirs, and executors.  Nothing herein shall prevent either party from, as required by law or legal process, testifying or otherwise providing truthful information in connection with any litigation, arbitration, administrative agency matter or other legal proceeding.  This provision also does not in any way restrict the parties from making truthful statements about their experiences litigating the Action.

        3.      The Parties and their attorneys agree that, except as necessary to enforce this Agreement, the terms and conditions of this Agreement shall remain confidential.  They will not seek media contact, nor issue public comment or publicity with respect to the disposition of the Action, and will make no voluntary statement or take any other action that might reasonably be expected to result in disclosure of the facts or terms of this Agreement, or the claims or discussions leading to the Agreement, or the consideration paid or provided to Tahirou by Defendants.  Tahirou has not disclosed, and shall not disclose, the terms and conditions of this Agreement to anyone other than his tax advisor(s), immediate family and attorneys.  He shall forthwith instruct his tax advisor(s), immediate family and attorneys not to disclose the existence or terms and conditions of this Agreement to anyone.

    Except as necessary to enforce this agreement, including the filing of this agreement with the United States District Court, the Parties may disclose information related to the disposition of the Action only if required to do so by any governmental agency, court of law, or other individual or entity empowered by law to require him or it to do so.  Before divulging such information to any such individual or entity, any disclosing Party shall give all other Parties to this Agreement ten (10) days' written notice of intent

to do so, so long as such notice is legally allowed.

Defendants agree that if asked about Tahirou's employment with them, they will only provide position held, and dates of employment, and if authorized, salary information.

## **GENERAL RELEASE**

1. In and for the consideration of the payments set forth below, and other good and valuable consideration, Tahirou hereby RELEASES and forever discharges Defendants, and their present and former parents, affiliates, subsidiaries, successors and assigns, as well as their present and former officers, owners, partners, members, directors, employees, agents, board members, counsel, attorneys, insurers, reinsurers, heirs, executors, and assigns (cumulatively, the "Releasees") of and from all FLSA, CWA, or other similar wage-and-hour related actions, causes of action, suits, debts, dues, sums of money, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which Tahirou ever had, now has, or which his heirs, executors, administrators, successors and assigns (cumulatively with Tahirou, the "Releasors") hereafter shall, can or may have, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the execution of this Agreement. This release by Releasors includes, but is not limited to, any and all claims arising before Tahirou's execution of this Agreement as a result of alleged wage-and-hour violations that may arise under the Connecticut Workers' Compensation Act which may permissibly be released without the approval of a Commissioner of the Connecticut Workers' Compensation Commission, as well as any and all claims for attorneys' fees and costs. Nothing herein shall be construed to prohibit Tahirou from challenging his right to any vested benefits to which he is entitled.

4

**PAYMENTS AND CONSIDERATION FOR SETTLEMENT AND RELEASE**

1. In consideration for this RELEASE of all Defendants, Lesinsky will pay to Tahirou the sum of $56,000.00 (Fifty-Six Thousand Dollars) (hereinafter, the "Settlement Sum"), with Lesinsky paying a total of $28,000 to Tahirou and $28,000 to Carey & Associates P.C. For the first payment on the $28,000 amount payable to Carey & Associates, Lesinsky will issue a check made payable to Carey & Associates, P.C. in the amount of $10,000.00 (Ten Thousand and Zero cents) by February 29, 2024. Lesinsky will subsequently make individual checks payable to Tahirou every other month, starting on April 1, 2024, followed by one check on June 1, 2024, etc., and alternatively every other month to Carey & Associates P.C., starting May 1, 2024, followed by one check on July 1, 2024, etc., for sixteen payments in total, in the sum of $3,000.00 (Three Thousand - Dollars and No Cents) continuing on every first day of the month for fifteen months (15) months or until the entire Settlement Sum has been paid to Tahirou (the "Settlement Term"), whichever is sooner. The 16th and final payment will be in the amount of One Thousand Dollars and No Cents ($1,000.00) made payable to Tahirou. All checks will be delivered to Carey & Associates, P.C. In the event a single monthly payment is not made by the first day of each month during the Settlement Term, Lesinsky will have ten business days to cure the payment or cause the entire Settlement Sum to be due and immediately owing.

2. Johnson will not be required to pay to Tahirou any amount. However, in further consideration for this General Release, Johnson promises to pay to Tahirou the sum of $3,137.00 (Three Thousand One Hundred Thirty-Seven Dollars) in the event that Lesinsky fails to pay the entire Settlement Sum by the end of the Settlement Term. In no event shall Johnson be required to pay anything more than $3,137.00. This

5

contingent payment is subject to two conditions precedent: (1) that Lesinsky fails to pay the Settlement Sum by the end of the Settlement Term; and (2) that Johnson has at that time an annual salary or wage in excess of $50,000 and unencumbered, liquid assets in a bank account in excess of $10,000.

      3.      Upon Execution of this Settlement Agreement and General Release, Tahirou shall voluntarily dismiss the Complaint with prejudice and terminate this Action. Nevertheless, the Parties agree that the Court may retain jurisdiction over this case to enforce the terms of this Settlement Agreement and General Release.

      4.      As an express condition of the payments set forth above, Tahirou shall provide Defendants with an IRS Form W-4 and an IRS form W-9. Carey & Associates P.C. shall provide an IRS Form W-9.

      5.      It is understood and agreed by the Parties that the Parties expressly rely upon the promises, representations, and warranties made by the Parties in this Agreement, and that any breach of such promises, representations and warranties would constitute a material breach of this Agreement.

      6.      Tahirou understands and agrees that Defendants would be obligated to respond truthfully to any inquiry or request for further information by the Internal Revenue Service ("IRS") or the state Department of Revenue Services ("DRS") concerning the payment to be made under this Agreement. Tahirou further understands and agrees that the determination of the tax treatment, if any, of the payments pursuant to this Agreement will be exclusively within the province of the IRS, DRS and any appropriate judicial authority, pursuant to law, and that Defendants do not undertake any guarantee that Tahirou will qualify for or obtain any particular tax treatment, and that Tahirou will have no action or claim whatsoever against Defendants related to tax

treatment or for information provided to the IRS or DRS.  In the event that the IRS or DRS reclassifies any non-wage payments under this Agreement as wages, Tahirou agrees that he would be exclusively responsible for any employee portion of tax and penalties (if assessed) applicable to the reclassified payment, and Defendants agrees that they would be exclusively responsible for the employer portion of payroll tax and penalties (if assessed) applicable to the reclassified payments.

7. In granting the release herein, Tahirou understands that this Agreement includes a release of all claims known or unknown.  Tahirou acknowledges that he has no physical or mental impairment of any kind which has interfered with his ability to read and understand the meaning of this Agreement or its terms, and that he is voluntarily entering into this Agreement and in doing so is not acting under coercion or duress, or under the influence of any medication or mind-altering chemical of any type.

8. Tahirou represents that he has not filed any complaint or charge, either formal or informal, against Releasees, except those expressly identified herein.

Tahirou represents and acknowledges that no representation, statement, promise, inducement, threat or suggestion has been made by Defendants or any agent or representative of Defendants to influence him to sign this Agreement, except such statements as are expressly set forth herein.

9. Tahirou declares and represents that he has read this Agreement and understands its terms.

10. This Agreement represents the entire agreement between the Parties hereto and supersedes all prior agreements or understandings, written or oral, between the Parties.  This Agreement may not be changed except by an instrument in writing signed by the Parties.

11. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut applicable to contracts made and to be performed therein, without giving effect to the principles thereof relating to conflict of laws.

12. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

13. If any provision of this Agreement is found to be illegal or unenforceable, such portion will be deemed to be restated to reflect as nearly as possible the original intentions of the parties in accordance with applicable law, and the remainder of this Agreement will remain in full force and effect.

14. In the event of any dispute about the terms and conditions of this Agreement, the Court will retain jurisdiction over the case and the parties to ensure the parties comply with the settlement terms herein, including the option to reopen the litigation for which the settlement agreement arose.

**[SIGNATURE PAGES TO FOLLOW]**

Dated: February 6, 2024

_____
Abdoul Malik Tahirou

Dated: February 15, 2024

_____
New Horizon Enterprises, LLC
By: Janelle Lesinsky, Owner

Dated: February 15, 2024

_____
By: Janelle Lesinsky, Individual

Dated: February 8, 2024

_____
By: Betty Johnson, Individual